**JS 44**  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS Dalton Harben & Linnea Harben, h/w
2969 Windy Bush Road
Newtown, PA 19840

**DEFENDANTS** Amer Sports Company
t/a Salomon Sports - 8750 Bryn Mawr Avenue
Chicago, Illinois 60631
(SEE ATTACHED LISTING OF ADDITIONAL DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff   **Bucks**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Chicago, Illinois**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jack Meyerson, Esq./Debora O'Neill, Esq.
Meyerson & O'Neill-1700 Market St. Ste. 3025
Philadelphia, PA 19103 (215)972-1376

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                            and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332

Brief description of cause:
Product Liability, negligence & related claims resulting in serious permanent

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Excess of $1 million

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

N/A

JUDGE _____   DOCKET NUMBER _____

DATE  5/17/2010

SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

*injury due to failure of defective ski equipment

## LIST AND ADDRESSES OF DEFENDANTS

AMER SPORTS COMPANY
t/a SALOMON SPORTS
8750 Bryn Mawr Avenue
Chicago, ILL 60631

AMER SPORTS WINTER &
OUTDOOR COMPANY
t/a SALOMON SPORTS
2030 Lincoln Avenue
Ogden, UT

SALOMON USA a/k/a SALOMON
NORTH AMERICA INC. t/a
SALOMON SPORTS
5055 N. Greeley Ave.
Portland, OR 97217

THE BENT GATE, INC. t/a
BENT GATE MOUNTAINEERING
1313 Washington Ave.
Golden, CO

BACKCOUNTRY.COM, INC
1678 W. Redstone Center Dr.
Park City, Utah

  and
DOE MANUFACTURERS

   Defendants.

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2969 Windy Bush Road Newtown PA 19840

Address of Defendant: 8750 Bryn Mawr Avenue Chicago, Illinois 60631

Place of Accident, Incident or Transaction: **Sale and delivery of defective products in Newtown, Pennsylvania**

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☐

UNKNOWN

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☒ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Debora A. O'Neill, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 5/17/2010          _____          35077
                         Attorney-at-Law                   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/17/2010          _____          35077
                         Attorney-at-Law                   Attorney I.D.#

CIV. 609 (6/08)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Dalton Harben & Linnea Harben, h/w          :          CIVIL ACTION

                 v.          :

Amer Sports Company                          :          NO.
t/a Salomon Sports, et al

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

5/17/2010          Debora A. O'Neill          Plaintiffs
_____          _____          _____
**Date**          **Attorney-at-law**          **Attorney for**

215-972-1376          215-972-0277          doneill@meyersonlawfirm.com
_____          _____          _____
**Telephone**          **FAX Number**          **E-Mail Address**

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DALTON HARBEN                          :
    and                          :
LINNEA HARBEN h/w,                     :
2969 Windy Bush Road                   :
Newtown, PA 19840                      :    CIVIL ACTION NO.
                                       :
                                       :
        Plaintiffs,               :
    v.                           :
AMER SPORTS COMPANY                    :
t/a SALOMON SPORTS                     :
8750 Bryn Mawr Avenue                  :
Chicago, ILL 60631                     :    JURY TRIAL DEMANDED
                                       :
AMER SPORTS WINTER &                   :
OUTDOOR COMPANY                        :
t/a SALOMON SPORTS                     :
2030 Lincoln Avenue                    :
Ogden, UT                              :
                                       :
SALOMON USA a/k/a SALOMON              :
NORTH AMERICA INC. t/a                 :    **COMPLAINT**
SALOMON SPORTS                         :
5055 N. Greeley Ave.                   :
Portland, OR 97217                     :
                                       :
THE BENT GATE, INC. t/a                :
BENT GATE MOUNTAINEERING               :
1313 Washington Ave.                   :
Golden, CO                             :
                                       :
BACKCOUNTRY.COM, INC                   :
1678 W. Redstone Center Dr.            :
Park City, Utah                        :
                                       :
        and                      :
DOE MANUFACTURERS                      :
                                       :
        Defendants.               :

## COMPLAINT

Plaintiffs, DALTON HARBEN and LINNEA HARBEN, by and through their undersigned attorneys, aver as their civil action Complaint against Defendants Amer Sports Company t/a Salomon Sports;  Amer Sports Winter & Outdoor Company t/a Salomon Sports; Salomon USA a/k/a Salomon North America Inc. t/a Salomon Sports; The Bent Gate, Inc. t/a Bent Gate Mountaineering; Backcountry.com, Inc. and Doe Manufacturers as follows:

### NATURE OF THE ACTION

1.     This is a product liability and negligence action arising as a result of plaintiff, Dalton Harben, sustaining severe and disabling permanent injuries at thirty two years of age when the defective ski equipment sold, distributed, manufactured and advertised by defendants deflected and/or failed, disengaging plaintiff from his skis, hurling plaintiff down the slope, catapulting plaintiff into a tree, leaving plaintiff unable to stop his fall and forcing plaintiff to plummet over 1500 feet down a steep ravine, which resulted in severe and disabling permanent injuries to plaintiff's right knee and leg, and, thereby, crippling and maiming plaintiff for life as more fully described below.

### PARTIES

2.     Plaintiff,  DALTON HARBEN, is a citizen of Pennsylvania residing at 2969 Windy Bush Road, Newtown, PA 19840.

3.     Plaintiff, LINNEA HARBEN, is a citizen of Pennsylvania residing at 2969 Windy Bush Road, Newtown, PA 19840, and the wife of Dalton Harben.

4.     Defendant, AMER SPORTS COMPANY, t/a SALOMON SPORTS ("Amer

2

Sports"), is a corporation incorporated under the laws of Delaware, with its principal place of business located at 8750 Bryn Mawr Avenue, Chicago, ILL 60631. At all times relevant hereto, defendant Amer Sports was in the business of designing, manufacturing, selling, and advertising ski equipment under the Salomon brand name including but not limited to boots, touring pads, tech fittings and/or bindings for use in backcountry skiing and was engaged in the business of distributing, labeling, marketing, promoting and/or selling, either directly or indirectly, through distributors, third parties or related entities including but not limited to defendants herein.

5.     Defendant AMER SPORTS WINTER & OUTDOOR COMPANY t/a SALOMON SPORTS  ("ASWO"), is a corporation incorporated under the laws of Delaware, with its principal place of business located at 2030 Lincoln Avenue, Ogden, UT. At all times relevant hereto, defendant ASWO was in the business of designing, manufacturing, selling, and advertising ski equipment under the Salomon brand name including but not limited to boots, touring pads, tech fittings and/or bindings for use in backcountry skiing and was engaged in the business of distributing, labeling, marketing, promoting and/or selling, either directly or indirectly, through distributors, third parties or related entities including but not limited to defendants herein.

6.     Defendant SALOMON USA a/k/a SALOMON / NORTH AMERICA INC. t/a SALOMON SPORTS ("Salomon USA"), is a corporation incorporated under the laws of Delaware, with its principal place of business located at 5055 N. Greeley Ave, Portland, OR 97217. At all times relevant hereto, defendant Salomon USA was in the business of designing, manufacturing, selling, and advertising ski equipment under the Salomon brand name including but not limited to boots, touring pads, tech fittings

3

and/or bindings for use in backcountry skiing and was engaged in the business of distributing, labeling, marketing, promoting and/or selling, either directly or indirectly, through distributors, third parties or related entities including but not limited to defendants herein.

7.      Defendants Amer Sports, ASWO, and Salomon USA are collectively referred to herein as the "Amer Sports / Salomon Defendants."

8.      Defendant, THE BENT GATE, INC. t/a BENT GATE MOUNTAINEERING ("Bent Gate Mountaineering") is a corporation incorporated under the laws of Colorado, with its principal place of business located at 1313 Washington Ave., Golden, CO.  At all times relevant hereto, defendant Bent Gate Mountaineering was in the business of selling, distributing and advertising ski equipment under the Salomon brand name including but not limited to boots, touring pads, tech fittings and/or bindings for use in backcountry skiing and was engaged in the business of distributing, labeling, marketing, promoting and/or selling, either directly or indirectly, through distributors, third parties or related entities including but not limited to defendants herein.

9.      Defendant BACKCOUNTRY.COM, INC. ("Backcountry.com") is a corporation incorporated under the laws of Utah, with its principal place of business located at 1678 W. Redstone Center Dr., Park City, Utah.  At all times relevant hereto, defendant Backcountry.com was in the business of selling, distributing and advertising ski equipment under the Salomon brand name including but not limited to boots, touring pads, tech fittings and/or bindings for use in backcountry skiing and was engaged in the business of distributing, labeling, marketing, promoting and/or selling, either directly or indirectly, through distributors, third parties or related entities including but not limited to

4

defendants herein.

10.   The true names and capacities of defendant DOE MANUFACTURERS (whether individual, corporate, associate or otherwise) of component parts of the products at issue are unknown to plaintiffs, and request for their identity will be made to defendants named herein in discovery. As soon as plaintiffs are able to initiate discovery, and plaintiffs able to identify the true names and capacities of DOE MANUFACTURERS, if any, plaintiffs will seek leave of Court to amend this Complaint.

## JURISDICTION AND VENUE

11.   This Court has diversity jurisdiction of this claim pursuant to 28 U.S.C. §1332 in that the dispute is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

12.   Venue is in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391 in that plaintiffs reside in the Eastern District of Pennsylvania, and because a substantial part of the events giving rise to plaintiffs' claim occurred within this judicial district, including the sale and delivery of the defective products at issue, and defendants transact regular business, sales, marketing and deliveries in this judicial district.

## OPERATIVE FACTS

13.   Backcountry skiing is skiing that is done in untamed snow, and in sparsely populated rural regions, usually mountainous.  The skiing involves generally undeveloped areas, over ungroomed and unmarked slopes or pistes, such as skiing in

unmarked or unpatrolled areas within a ski resort's boundaries or in the backcountry, frequently among trees. The skiers are essentially making their own trails and the land and snow pack often are not monitored, patrolled or maintained.

14. Backcountry skiing has gained in popularity in recent years and necessitates the use of specialized safety gear, including boots, skis and bindings which allow for both walking or "touring" and skiing.

15. One type of backcountry ski equipment uses bindings that free the skier's heel for vertical movement during walking, and then let the skier latch the heel to the ski for downhill skiing.

16. In 1990, Dynafit introduced a patented new light safety touring binding system for skis which allowed functioning for both touring and fixed heel skiing. The low tech touring binding due to its light weight became immensely popular for use in backcountry skiing. In addition to the bindings which attached to the skis, the binding system required specialized Dynafit metal tech inserts in ski boots, which tech inserts were subject to and protected under the Dynafit patent.

17. Unlike Dynafit touring bindings, most other bindings which function as touring and fixed heel skiing equipment have a heel and toe unit mounted on a rigid connector or frame such as a plate or bar.

18. Dynafit bindings eliminate weight and parts by using the ski boot as the connecting device, through toe and heel connectors built right into the ski boot itself.

19. During the duration of the patent, if manufacturers wanted to advertise, manufacture and sell Dynafit compatible ski boots to be used with Dynafit backcountry touring bindings, the manufacturers had to purchase and use the patented Dynafit tech

6

inserts, the metal toe and heel connectors for the boots, or pay royalties and/or licensing fees to Dynafit.

20.     On or about January 2010, the Dynafit patent expired, thereby, allowing other manufacturers to make, design and sell ski boots, tech inserts and/or touring pads to be used with Dynafit backcountry / touring bindings.

21.     Seeking to take commercial advantage of the expiration of the Dynafit patent, the Amer Sports / Salomon Defendants designed and developed the Salomon Quest Pro boot line for the backcountry skiing market and began advertising and releasing boots and touring pads for sale in January 2010, upon expiration of the Dynafit patent.

22.     The Amer Sports / Salomon Defendants began promoting the Salomon Quest ski boot line in six variations, including the Salomon Quest 12 boot, which was advertised and promoted as a heavy stiff, high performance alpine boot which works both for downhill and touring, and designed to work with interchangeable touring pads that can swap out with the regular alpine souls and are compatible with all touring bindings including Dynafit.

23.     Defendants advertised the Salomon Quest 12 boot to backcountry skiers as a high performance ski boot designed to ski like a top of the line alpine boot and, also, hike like a top of the line backcountry boot.

24.     The Amer Sports / Salomon Defendants designed and manufactured specialized metal toe and heel tech inserts or connectors for touring bindings, which were incorporated directly into the Salomon Quest Pro Boots and into the Salomon touring pads and advertised for use with low tech bindings manufactured by Dynafit, G3

7

Onyx model, Plume, and ATK Race.

25.    Defendants were and are the commercial sellers, assemblers, distributors, designers, manufacturers, suppliers, installers and/or successors to the same in the chain of design, manufacture, distribution and sale of the foregoing Salomon Quest Pro boots and touring pads.

26.    The foregoing Salomon Quest Pro boots and touring pads were designed and sold by defendants to be utilized by purchasers in backcountry skiing.

27.    Defendants advertised, represented and warranted in advertisements and promotional material that the Salomon Quest Pro boots and touring pads products were compatible with and had strong connectors, sufficient to be used safely with low tech bindings, including bindings manufactured by Dynafit.

28.    However, prior to manufacturing and releasing the Salomon Quest Pro Boots, interchangeable touring pads, and metal tech inserts, the Amer Sports / Salomon Defendants also failed to adequately test and inspect the products to ensure that the products did not expose users to unreasonable harm, danger and risk of serious injury.

29.    Prior to manufacturing and releasing the Salomon Quest Pro Boots, interchangeable touring pads, and metal tech inserts, the Amer Sports / Salomon Defendants failed to adequately test and inspect the products to discover defects, and to ensure that the products were of sufficient strength and integrity to be compatible with Dynafit bindings and not become deformed, bent, deflected or otherwise fail under normal use in backcountry skiing.

30.    The Amer Sports / Salomon Defendants were on notice of and should

have known of the need to adequately test for safety of these products from their prior experience with the recall in 2008 of defective toe components of certain ski bindings manufactured and sold by Salomon USA. The ski bindings were recalled due to problems with the toe components which failed to fully secure the ski boot to the ski binding, causing the binding to release unexpectedly, and, thereby, causing the skier to lose control or fall and suffer serious injuries.

31.    In reliance on the foregoing affirmations of fact and representations made by defendants in advertisements, promotional material and interactive websites, and specifically, that the Salomon ski boots and touring pads were compatible with Dynafit touring bindings on or about March 25, 2010, plaintiff Dalton Harben purchased Salomon Quest 12 Pro Boots at a price of $495.96 from defendant Bent Gate Mountaineering, which boots were shipped by defendant to plaintiffs' residence in Newtown, Pennsylvania.

32.    In reliance on the foregoing affirmations of fact and representations made by defendants in advertisements, promotional material and interactive websites, and specifically, that the Salomon ski boots and touring pads were compatible with Dynafit touring bindings on or about March 25, 2010, plaintiff Dalton Harben purchased Salomon Quest Touring Pads from defendant backcountry.com at a price of $34.97, which were shipped by defendant to plaintiffs' residence in Newtown, Pennsylvania.

33.    In reliance on the foregoing affirmations of fact and representations made by defendants in advertisements, promotional material and interactive websites, on or about March 25, 2010, plaintiff Dalton Harben purchased Dynafit TLT Vertical FT Z12 touring bindings from defendant backcountry.com at a price of $413.04, which were

9

shipped by defendant to plaintiffs' residence in Newtown, Pennsylvania.

34.     Following delivery of the foregoing products, plaintiff had the Dynafit bindings correctly installed on his skis by a skilled and trained technician with substantial experience in Dynafit binding installation.

35.     Following delivery of the foregoing products, plaintiff installed the Salomon touring pads to the Salomon Quest 12 Pro Boots in accordance with the manufacturers' directions and instructions.

36.     On or about April 14, 2010, plaintiff Dalton Harben went backcountry skiing with a group of friends at Mount Washington in New Hampshire, a well known backcountry skiing venue with designated hiking and skiing areas.  Plaintiff and his group are all very skilled and experienced skiers and were fully prepared with safety gear and emergency items on their trip.

37.     The group hiked up to a certain elevation, at which point they decided to start skiing downward.  Plaintiff and another friend started down.  It was only plaintiff's second run using the Salomon boots and touring pads purchased from and manufactured by defendants. However, as plaintiff was making a gradual slow turn proceeding left at approximately 10 mph on firm snow, the right toe connectors in each of the Salomon Quest Pro Boots failed by deflecting, and bending, such that the binding could not secure and hold plaintiff's ski boots to the skis.

38.     As the toe connectors failed, it caused plaintiff's right boot, and then his left boot to rip out of the Dynafit bindings, throwing plaintiff off balance, releasing his skis and sending the skis ahead of plaintiff downhill.

39.     When the Salomon boots and fittings failed, plaintiff began to fall and slide

10

approximately 1500 ft on a 40 degree angle down the slope, hurling into and impacting his right knee and leg on a tree, and then plummeting down into Ammonoosuc Ravine, before coming to rest near the bottom of the gully which was covered with debris.

40.    Plaintiff, who was in considerable pain and a state of shock, was located by helicopter from several groups of emergency personnel from the New Hampshire Fish and Game Department, Twin Mountain Fire and Rescue Pemigewasset Search and Rescue, and Androscoggin Valley Search and Rescue. Plaintiff was airlifted by helicopter to Littleton Regional Hospital in Littleton, New Hampshire with severe injuries to his right knee and leg, including a shattered knee cap, severed ligaments and broken and shattered bones throughout his lower right leg.  Upon arrival at the hospital and following evaluation of the very serious and traumatic injuries, plaintiff was then transported via a second airlift to Dartmouth - Hitchcock Medical Center in Lebanon, New Hampshire.  The injuries have required plaintiff to undergo multiple surgeries in an attempt to prevent amputation of his right leg, including but not limited to anticipated bone grafts, which surgeries and medical treatment is continuing to date.

41.    Following the date of plaintiff's accident, on or about April 25, 2010, Salomon issued a recall of its Quest Pro boots and touring pads citing potential incompatibility when using Salomon Quest Pro Boots with low tech touring bindings, including Dynafit, G3 Onyx model, Pkume and ATK Race.

42.    Upon information and belief, another failure of the same Salomon ski equipment involved in plaintiff's accident occurred prior to the date of plaintiff's accident but the Amer Sports / Salomon Defendants failed to take any action to correct or recall the substandard Salomon fittings.

43.     As a result of the failure of the toe tech inserts or connectors, and the boots becoming disengaged, plaintiff has suffered severe, permanent, disabling and crippling injuries including but not limited to shattered and broken bones and injuries to his right knee and leg, including the loss of plaintiff's knee cap and loss of useful function of his leg, as well as substantial psychological trauma and severe emotional distress.

44.     Plaintiff has incurred and will continue to incur in the future, medical expenses for the care and treatment of his injuries.

45.     Plaintiff has incurred and will continue to incur in the future significant wage loss due to the severity and treatment of his injuries.

46.     As a further result of this accident, plaintiff has suffered and continues to suffer great physical pain, mental anguish, disability, embarrassment and loss of life's enjoyment and pleasures.

## FIRST COUNT
## STRICT LIABILITY - DEFECTIVE DESIGN

47.     Plaintiff re-alleges all preceding paragraphs as if set forth at length.

48.     At all times material hereto, defendants were engaged in and regularly conducted business in the Eastern District of Pennsylvania.

49.     When defendants designed, manufactured, assembled, sold and distributed the foregoing Salomon Quest 12 Pro Boots, touring pads, tech inserts and other component parts, defendants were in the business of designing, manufacturing, assembling, selling and distributing ski equipment and boots for use by individuals engaged in the activity of backcountry skiing.

50.     The subject Salomon Quest 12 Pro Boots, touring pads, and tech inserts

12

reached the users and consumers thereof without any material change in their condition or design.

51.   The defendant manufacturers, sellers and distributors expected that the Salomon Quest 12 Pro Boots, touring pads, and tech inserts would reach the users and consumers thereof without any material change in their condition or design.

52.   The foregoing Salomon Quest 12 Pro Boots, touring pads, and tech inserts were defective when they left defendants' possession because of defects in the design.  Such design defects included but are not limited to:

   (a)   failure to provide metal toe tech inserts and/or connectors which were strong enough to adequately secure the ski boots to the Dynafit touring bindings;

   (b)   failure to provide metal toe tech inserts which were properly and securely affixed and installed in the Salomon boots, touring pads and/or fittings;

   (c)   failure to provide tech inserts which did not deflect, deform or bend upon use with Dynafit and/or other touring bindings;

   (d)   using improper and substandard metal, too weak for use in the tech inserts;

   (e)   failure to use and construct the toe tech inserts and/or connectors of sufficient metal with appropriate weight and thickness to prevent deflection and/or bending;

   (f)   failure to design and position the location of the lighting holes, such that sufficient metal would remain in critical locations essential to maintaining adequate strength of the fitting in the binding;

(g)   failure to design and position the location of the lighting holes, such that metal remained in critical locations essential to maintaining the integrity of the fitting in the binding;

(h)   designing fittings which were too weak to function as tech fittings;

(j)   designing an unstable means of attachment of the ski boots and touring pads to touring bindings;

(k)   failing to provide and design an adequate boot and connector combination which was strong enough to hold and sustain the attachment of the ski boots to the bindings;

(l)   failing to be compatible with touring bindings;

(m)   failing to conform to applicable industry standards, regulations and guidelines; and

(n)   failing to be reasonably safe for their intended purpose.

53.   The design, manufacture and sale of the Salomon Quest 12 Pro Boots, touring pads, and tech inserts with the aforementioned design defects, made the combination ski boot and binding connector system, unreasonably dangerous for their intended use.

54.   Had defendants taken action in designing, manufacturing and selling the Salomon Quest 12 Pro Boots, touring pads, and tech inserts, to prevent deflection, bending, deforming, loosening, and/or detachment of the toe tech inserts and/or connectors, the accident to plaintiff would not have occurred.

55.   The Salomon Quest 12 Pro Boots, touring pads, and tech inserts manufactured, assembled, sold, distributed and/or supplied by defendants were

14

defective in design, in that, when it left the hands of the manufacturer, supplier or seller, it was unreasonably dangerous, as it was more dangerous than an ordinary user would expect.

56.    As a direct, proximate and legal result of the defective condition of the foregoing Salomon Quest 12 Pro Boots, touring pads, and tech inserts and ski boot and binding connector system, designed, manufactured, sold, assembled, packaged, distributed and/or supplied by defendants, plaintiff has suffered and will continue to suffer the injuries, harm, economic loss and damages heretofore alleged.

57.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of the foregoing described Salomon products, was fraudulent, knowing misconduct, willful and/or conduct undertaken recklessly and with conscious disregard for the safety of plaintiff, such as to constitute despicable conduct, and oppression, fraud and malice and, at all times relevant, such conduct was ratified by the corporate executives of defendants, thereby entitling plaintiff to punitive damages in an amount appropriate to punish and set an example of defendants.

## SECOND COUNT
## STRICT LIABILITY - MANUFACTURING DEFECT

58.    Plaintiff re-alleges all preceding paragraphs as if set forth at length.

59.    At all times material hereto, the Salomon Quest 12 Pro Boots, touring pads, and tech inserts and defendants' ski boot and binding connector system, were designed, designed, developed, manufactured, tested, packaged, distributed, marketed, labeled and/or sold by defendants in a defective and unreasonably

dangerous condition at the time it was placed into the stream of commerce in ways which include the following:

(a)    The Salomon ski boot and binding connector system, including the fittings, contained manufacturing defects which rendered the product too weak and incompatible with touring bindings, thereby, being unreasonably dangerous when placed in the stream of commerce by defendants;

(b)    The manufacturing defects in the Salomon ski boot and binding connector system, including the fittings, occurred while the product was in the possession and control of the defendants;

(c)    The Salomon ski boot and binding connector system, including the fittings, was not made in accordance with the defendants' specifications or performance standards; and

(d)    The manufacturing defects in the Salomon ski boot and binding connector system, including the fittings, existed before it left the control of the defendants.

60.    As a direct, proximate and legal result of the manufacturing defects in the Salomon ski boot and binding connector system, including the fittings, the plaintiff has suffered and will continue to suffer the injuries, harm, economic loss and damages heretofore alleged.

61.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of the foregoing described Salomon products, was fraudulent, knowing misconduct, willful and/or conduct undertaken recklessly and with conscious disregard for the safety of plaintiff, such as to constitute despicable conduct, and oppression, fraud and malice and, at all times relevant, such conduct was ratified by the corporate executives of defendants, thereby entitling plaintiff to punitive damages in an amount appropriate to punish and set an example of defendants.

16

## THIRD COUNT
## STRICT LIABILITY - FAILURE TO WARN

62.    Plaintiff re-alleges all preceding paragraphs as if set forth at length.

63.    The Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings and defendants' ski boot and binding connector system did not warn purchasers or users of the equipment as to the danger posed by the substandard and weak tech inserts or fittings in the ski boot and touring pads and the tendency of the fittings to deflect, bend, deform and cause the fittings to disengage from low tech bindings, including bindings manufactured by Dynafit. Specifically, neither the Salomon Quest 12 Pro Boots, nor the touring pads boots, contained any warning, instruction or advice to alert users of the ski equipment as to the danger posed by using the Salomon products in connection with touring bindings used in backcountry skiing.

64.    Similarly, neither the Salomon Quest 12 Pro Boots, nor the touring pads for the boots, contained any warning, instruction or advice to alert users of the ski equipment that the Salomon products were incompatible with touring bindings including Dynafit, and the fitting could fail causing the ski boots to become disengaged from the skis, and thereby, cause the skier to lose control or fall and suffer serious injuries.

65.    The Salomon Quest 12 Pro Boots, and the Salomon interchangeable touring pads did not warn purchasers or users of the ski equipment as to the danger posed by the weight of the ski boots and the instability and weakness of the metal toe tech inserts and/or fittings.

66.    The Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings and defendants' ski boot and binding connector system were defective

17

insofar as they were not accompanied by adequate warnings or instructions, which included but are not limited to:

    (a)    failure to label and/or provide instructions and warnings that the products should not be used with low tech bindings, including touring bindings manufactured by Dynafit;

    (b)    failure to warn of the dangerous propensity of the ski boots, and fittings to become disengaged when used with low tech bindings, including touring bindings manufactured by Dynafit; and

    (c)    failure to contain an adequate warning of the incompatibility of the heavy ski boots, and fittings with low tech bindings, including touring bindings manufactured by Dynafit, which would subject users to a risk of serious injury.

67.    The design, manufacture and sale of such Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings and with the aforementioned deficiency in warnings, made the foregoing defendants' ski boot and binding connector system, unreasonably dangerous for their intended use.

68.    Had defendants placed proper and adequate warnings on the foregoing Salomon Quest 12 Pro Boots and touring pads, including but not limited to the danger posed by weakness and instability of the toe tech inserts and fittings with low tech touring bindings, as more fully described above, plaintiff would have followed such warnings, thereby, avoiding injury and the accident.

69.    As a direct, proximate and legal result of the defective condition of the Salomon Quest 12 Pro Boots and touring pads, designed, manufactured, sold,

assembled, packaged, distributed and/or supplied by defendants, plaintiff has suffered and will continue to suffer the injuries, harm, economic loss and damages heretofore alleged.

70.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of the foregoing described Salomon products, was fraudulent, knowing misconduct, willful and/or conduct undertaken recklessly and with conscious disregard for the safety of plaintiff, such as to constitute despicable conduct, and oppression, fraud and malice and, at all times relevant, such conduct was ratified by the corporate executives of defendants, thereby entitling plaintiff to punitive damages in an amount appropriate to punish and set an example of defendants.

## FOURTH COUNT
## NEGLIGENCE

71.    Plaintiff re-alleges all preceding paragraphs as if set forth at length.

72.    Defendants had a duty to exercise reasonable care in the manufacture, assembly, sale and/or distribution of the foregoing Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings including a duty to assure that the products did not cause or expose users to unreasonable harm, danger and risk of serious injury.

73.    Defendants owed plaintiff and other users of the Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings which defendants designed, manufactured, assembled, distributed and sold, a duty to place an adequate warning of the dangerous propensity of the toe tech inserts and/or fittings to fail and become

19

separated from low tech bindings, including touring bindings manufactured by Dynafit.

74.    Defendants were negligent in designing, manufacturing, assembling and selling the Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings which were unsafe and defective for the reasons alleged above, in failing to discover the design defects when defendants knew or should have known of the dangerous and defective condition, including that created by the propensity of the toe tech inserts to become deformed, deflected, and/or bent; in failing to warn users of the dangerous and defective condition of the Salomon Quest 12 Pro Boots, touring pads, and toe tech inserts and/or fittings and its incompatibility with low tech bindings, including touring bindings manufactured by Dynafit; in failing to perform premarket and post market testing; in failing to provide adequate instructions or warnings; and in failing to use reasonable and ordinary care for the protection of persons who would purchase and use the products in backcountry skiing.

75.    As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of defendants described herein, plaintiff has suffered and will continue to suffer the injuries, harm, economic loss and damages heretofore alleged.

76.    Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of the foregoing described Salomon products, was fraudulent, knowing misconduct, willful and/or conduct undertaken recklessly and with conscious disregard for the safety of plaintiff, such as to constitute despicable conduct, and oppression, fraud and malice and, at all times relevant, such conduct was ratified by the corporate executives of

20

defendants, thereby entitling plaintiff to punitive damages in an amount appropriate to punish and set an example of defendants.

## FIFTH COUNT
## BREACH OF WARRANTY

77.    Plaintiff re-alleges all preceding paragraphs as if set forth at length.

78.    At the time defendants sold the aforesaid Salomon Quest 12 Pro Boots, and Salomon touring pads, and the component parts thereof, defendants warranted, both expressly and impliedly, that the products were free from defects, and were safe and suitable for the uses for which they were intended.

79.    Defendants breached the aforesaid warranties, both express and implied, by providing the users of the Salomon Quest 12 Pro Boots, Salomon touring pads, and the component parts thereof, with products which were defective as more fully described above, unreasonably dangerous and which were neither adequate nor suitable for the uses for which they were intended.

80.    Defendants breached their express warranties to plaintiff in violation of §§2313 and §§2318 of the Pennsylvania Uniform Commercial  Code.

81.    Defendants breached their implied warranties to plaintiff in violation of §§2314 and §§2315 of the Pennsylvania Uniform Commercial Code.

82.    As the direct result of defendants' breach of their express and implied warranties, plaintiff suffered severe and disabling injuries as more fully described above.

## SIXTH COUNT
## NEGLIGENT MISREPRESENTATION

83.     Plaintiff re-alleges all preceding paragraphs as if set forth at length.

84.     Defendants made the foregoing described representations of material facts to plaintiff, among other ways, in standardized packaging, promotional literature, pamphlets and advertising including without limitation, that the Salomon Quest 12 Pro Boots and Salomon touring pads manufactured, sold, distributed and/or supplied by defendants were safe, and also fit and effective for use compatible with low tech bindings, including bindings manufactured by Dynafit (i) without adequate testing of compatibility; (ii) with no reasonable ground for believing those representations to be true; (iii) without accurate or sufficient information upon which to base those representations; and (iv) with the awareness that they lack sufficient information upon which to base those representations.

85.     Defendants made the foregoing described representations negligently and without reasonable grounds for believing them to be true.  These representations were made directly by the defendants, their authorized agents, and in publications and other written promotional and advertising materials directed to the public, with the intention of inducing reliance and the purchase and use of the foregoing described Salomon products.

86.     The foregoing representations by defendants were, in fact, false.  The Salomon Quest 12 Pro Boots, Salomon touring pads and toe inserts were not safe, fit and effective for use compatible with low tech bindings, including bindings manufactured by Dynafit, the use of the Salomon products is unreasonably dangerous

22

and hazardous, and the Salomon Quest 12 Pro Boots, Salomon touring pads and toe

inserts have a serious propensity to cause users to suffer serious injuries, including

without limitation the injuries suffered by plaintiff Dalton Harben.

87.     At the time the defendants made these representations, and at the time

plaintiff purchased and used defendants' products, plaintiff was ignorant of the falsity of

those representations, and reasonably believed that the representations were true.

88.     In reliance upon defendants' representations, plaintiff was induced to

purchase and did use the Salomon Quest 12 Pro Boots, Salomon touring pads and toe

inserts.  If plaintiff had known the true facts, he would have never purchased and used

the foregoing describe Salomon products.

89.     Plaintiff reasonably relied to his detriment on the false statements of

defendants.  Plaintiff's reliance upon defendants' representations was justified, among

other reasons, because those representations were made by individuals and entities

who were in a position to know the true facts concerning the Salomon products, while

plaintiff was not in a position to know the true facts, and because defendants

aggressively marketed the use of the Salomon Quest 12 Pro Boots, Salomon touring

pads and toe inserts as compatible with Dynafit bindings, and downplayed the risk in

their use, thereby inducing plaintiff to purchase and use the Salomon products.

90.     As a direct, proximate and legal result of defendants' negligent

misrepresentations, plaintiff suffered, and will continue to suffer injury, harm and

economic loss as previously alleged in the foregoing paragraphs.

91.     Defendants' conduct in making the foregoing misrepresentations, was

fraudulent, knowing and willful misconduct, and/or conduct undertaken recklessly and

23

with conscience disregard for the safety of plaintiff and the general pubic, such as to constitute despicable conduct, and oppression, fraud and malice, and such conduct was at all times relevant ratified by the corporate executives of defendants herein, thereby entitling plaintiff to punitive damages in an amount appropriate to punish and set an example to defendants.

### SEVENTH COUNT
### LOSS OF CONSORTIUM CLAIM
### PLAINTIFF LINNEA HARBEN V. ALL DEFENDANTS

92.    Plaintiff Linnea Harben re-alleges all preceding paragraphs as if set forth at length.

93.    As a direct and proximate result of the defendants' carelessness, the Plaintiff, Linnea Harben, has been deprived and continues to suffer the loss and the and company, cooperation, society, congenial services, affection and aid that was previously a feature of her married life to plaintiff Dalton, and she will be so deprived in the future, all to her great detriment and loss.

WHEREFORE, Plaintiffs Dalton Harben and Linnea Harben request judgment in their favor and against Defendants Amer Sports Company t/a Salomon Sports; Amer Sports Winter & Outdoor Company t/a Salomon Sports; Salomon USA a/k/a Salomon North America Inc. t/a Salomon Sports; The Bent Gate, Inc. t/a Bent Gate Mountaineering; Backcountry.com, Inc. and Doe Manufacturers for compensatory and punitive damages in excess of $150,000, together with interest, costs of suit, attorneys' fees, and all other such relief as the Court deems proper.

24

## JURY DEMAND

Plaintiffs hereby demand a jury trial of all issues so triable.

Respectfully submitted,

Dated: May 17, 2010

Jack Meyerson (I.D. No. 16405)
Debora A. O'Neill (I.D. No. 35077)
MEYERSON & O'NEILL
1700 Market Street, Ste. 3025
Philadelphia, PA 19103
(215) 972-1376
Fax: (215) 972-0277

Attorneys for Plaintiffs
Dalton Harben and Linnea Harben

25