IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALTON HARBEN and LINNEA HARBEN h/w, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AMER SPORTS COMPANY, AMER SPORTS WINTER & OUTDOOR COMPANY t/a SALOMON SPORTS, SALOMON USA a/k/a SALOMON NORTH AMERICA INC. t/a SALOMON SPORTS, THE BENT GATE, INC. t/a BENT GATE MOUNTAINEERING, BACKCOUNTRY.COM, INC., and DOE MANUFACTURERS, | : | NO.   10-2284 |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                       December 8, 2010

      Currently pending before the Court is the Motion of Plaintiffs, Dalton Harben and Linnea Harben for Leave to Amend the Complaint to Join Additional Party, Salomon SAS. For the following reasons, the Motion is granted.

## I.     FACTUAL AND PROCEDURAL HISTORY

      According to the facts set forth in the Complaint, Defendants Amer Sports Company and Amer Sports Winter & Outdoor Company t/a/ Salomon Sports Salomon USA a/k/a Salomon North America Inc. t/a Salomon Sports (collectively the "Amer Sports/Salomon Defendants") designed and developed the Salomon Quest Pro boot line for the backcountry skiing market and began advertising and releasing boots and touring pads for sale in January 2010. (Compl. ¶ 21.) The Amer Sports/Salomon Defendants advertised their Salomon Quest 12 boot to backcountry skiers as

a high performance ski boot designed to ski like a top of the line alpine boot, and also hike like a top of the line backcountry boot.  (Id. ¶ 23.)  These Defendants also designed and manufactured specialized metal toe and heel tech inserts or connectors for touring bindings, which were incorporated directly into the Salomon Quest Pro Boots and into the Salomon touring pads, and advertised for use with low tech bindings manufactured by other companies including Dynafit, G3 Onyx model, Plume, and ATK Race.  (Id. ¶ 24.)  According to the Amer Sports/Salomon Defendants' advertisements and promotional material, the Salomon Quest Pro Boots and touring pads products were compatible with safe use of low tech bindings, including bindings manufactured by Dynafit.  (Id. ¶ 27.)

In reliance on the foregoing representations, Plaintiff Dalton Harben, on March 25, 2010, purchased Salomon Quest 12 Pro Boots at a price of $495.96 from Bent Gate Mountaineering ("Bent Gate"), which shipped the boots to Mr. Harben's residence in Newtown, Pennsylvania.  (Id. ¶ 31.)  On the same day, and again in reliance on the previous representations, Plaintiff also purchased Salomon Quest Touring Pads for $34.97 from Defendant Backcountry.com, which again shipped the pads to Plaintiff's home.  (Id. ¶ 32.)  Finally, Mr. Harben purchased Dynafit TLT Vertical FT Z12 touring bindings from Backcountry.com at a price of $413.04, and had them shipped to his Pennsylvania residence.  (Id. ¶ 33.)  Upon receipt of all of these products, Plaintiff had the Dynafit bindings installed on his skis by a "skilled and trained technician with substantial experience in Dynafit binding installation."  (Id. ¶ 34.)  Plaintiff himself installed the Salomon touring pads in the Salomon Quest 12 Pro Boots in accordance with the manufacturer's directions and instructions.  (Id. ¶ 35.)

On April 14, 2010, Plaintiff went backcountry skiing with a group of friends at Mount Washington in New Hampshire, which is a well-known backcountry skiing venue with designated hiking and skiing areas.  (Id. ¶ 36.)  According to the Complaint, the entire group was skilled and

experienced in this activity. (Id.) The group hiked up to a certain elevation, at which point they started skiing downward, making it Plaintiff's second run down the mountain using the Salomon boots and touring pads. (Id. ¶ 37.) As he was making a gradual slow turn on firm snow, the right toe connectors in each of the Salomon Quest Pro Boots failed by deflecting and bending, such that the binding could not hold Plaintiff's ski boots to the skis. (Id.) As the toe connectors failed, Plaintiff's right boot, and then his left boot, ripped out of the Dynafit bindings, throwing Plaintiff off balance, releasing his skis, and sending the skis ahead of Plaintiff downhill. (Id. ¶ 38.) Plaintiff thereafter fell and slid approximately 1500 feet on a 40 degree angle down the slope, impacting his right knee and leg on a tree, and then plummeting down into the Ammonoosuc Ravine, before coming to rest near the bottom of the debris-covered gully. (Id. ¶ 39.)

Plaintiff was airlifted by helicopter to Littleton Regional Hospital in Littleton, New Hampshire, with severe injuries to his right knee and leg, including a shattered knee cap, severed ligaments, and broken and shattered bones throughout his lower right leg. (Id. ¶ 40.) Upon the hospital's evaluation of his injuries, Plaintiff was transported by a second airlift to Dartmouth - Hitchcock Medical Center in Lebanon, New Hampshire. (Id.) The injuries required Plaintiff to undergo multiple surgeries in an attempt to prevent amputation of his right leg. (Id.) Treatment is ongoing and future bone grafts are anticipated. (Id.)

On April 25, 2010, following the date of Plaintiff's accident, Salomon issued a recall of its Quest Pro boots and touring pads citing potential incompatibility when using Salomon Quest Pro Boots with low tech touring bindings, including Dynafit, G3 Onyx model, Pkume, and ATK Race. (Id. ¶ 41.) The Complaint alleges, on information and belief, that another failure of the same Salomon ski equipment occurred prior to the date of Plaintiff's accident, but the Amer Sports/Salomon Defendants failed to take any action to correct or recall the substandard Salomon fittings. (Id. ¶ 42.)

3

On May 17, 2010, Dalton Harben and his wife Linnea commenced the present action against Amer Sports Company, Amer Sports Winter & Outdoor Company t/a/ Salomon Sports, Salomon USA a/k/a Salomon North America Inc. t/a/ Salomon Sports, The Bent Gate, Inc. t/a Bent Gate Mountaineering, Backcountry.com, Inc., and the unknown manufacturers of the products at issue. The Complaint sets forth seven counts as follows: (1) strict liability - defective design (id. ¶¶ 47-57); (2) strict liability - manufacturing defect (id. ¶¶ 58-61); (3) strict liability - failure to warn (id. ¶¶ 62-70); (4) negligence (id. ¶¶ 71-76); (5) breach of warranty (id. ¶¶ 77-82); (6) negligent misrepresentation (id. ¶¶ 83-91); and (7) loss of consortium by Plaintiff Linnea Harben. (Id. ¶¶ 92-93.)

Upon filing and service of the Complaint, Plaintiffs, on July 26, 2010, served document requests, interrogatories, and a notice for a corporate designee on the Amer Sports/Salomon Defendants. (Pls.' Mot. Amend Compl. ¶ 10.) Counsel for all Defendants met the next day at the offices of Plaintiffs' counsel for an inspection of the ski boots, sole pads, and equipment involved in the accident. (Id. ¶ 11.) During that meeting, counsel for the Amer Sports/Salomon Defendants represented that there was only one policy of insurance and that the Amer Sports Winter & Outdoor Company was the appropriate defendant to accept any liability for the Salomon products involved in the accident. (Id. ¶ 12 & Ex. D.) Thereafter, counsel for the Amer Sports/Salomon Defendants requested a sixty-day extension of time to respond to Plaintiffs' discovery requests in order to obtain the manufacturing and inspection documents located in France for the Salomon product line. (Id. ¶ 13.) Plaintiffs agreed to this extension based on counsel's representations. (Id. ¶ 14.) Ultimately, however, when answering the discovery, the Amer Sports/Salomon Defendants stated that they were not in possession of the documents responsive to a large majority of the requests. (Id. Ex. E.) According to Plaintiffs' Motion, the Amer Sports/Salomon Defendants refused to produce any discovery because a French-affiliated Salomon manufacturing facility, Salomon SAS, had the

4

requested information, but was not named as a defendant in the Complaint. (Id. ¶ 15.)

As a result of these events, Plaintiffs filed a Motion for Leave to Amend the Complaint, on October 20, 2010, in order to add Salomon SAS as a defendant. (Id. Ex. E.) Despite Plaintiffs' request for the Amer Sports/Salomon Defendants' written consent, Defendants' have declined to give such consent. (Id. ¶¶ 17-18.) The proposed Amended Complaint now seeks to both add Salomon SAS as a Defendant and dismiss The Bent Gate, Inc. t/a Bent Gate Mountaineering as a Defendant, upon discovery that this entity was not involved with either the sale or advertising of the defective component of the Salomon ski boot. (Id. ¶ 21.) The latter amendment has been effected by Stipulation and Order entered on December 3, 2010. The Amer Sports/Salomon Defendants, however, filed a Response on November 3, 2010, opposing the addition of Salomon SAS as a defendant, and Plaintiffs submitted a Reply Brief on November 5, 2010. The Court now turns to a consideration of this Motion.

**II. DISCUSSION**

Federal Rule of Civil Procedure 15(a) sets out the standard for granting leave to amend a complaint when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). The Rule clearly states that "[t]he court should freely give leave when justice so requires." Id. Nonetheless, "[t]he policy favoring liberal amendment of pleadings is not . . . unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "While a District Court has substantial leeway in deciding whether to grant leave to amend, when it refuses this type of request without justifying its decision,

5

this action is 'not an exercise of its discretion but an abuse of its discretion.'" Id. (quoting Foman, 371 U.S. at 182).

In the present matter, Plaintiffs seek to amend their Complaint primarily to name Salomon SAS as a defendant and, in turn, obtain needed discovery for the prosecution of their product liability claims. The Amer Sports/Salomon Defendants have opposed this Motion on two grounds: (1) futility because the Court does not have personal jurisdiction over Salomon SAS and (2) prejudice to the Amer Sports/Salomon Defendants due to the delay in joining an overseas corporation. The Court considers each argument individually.

### A. Futility

In their first argument, the Amer Sports/Salomon Defendants argue, without further explanation, that "[t]he Amer Defendants would be further prejudiced by plaintiffs joining Salomon SAS as an additional defendant because based on the face of plaintiffs' motion, it appears that Salomon SAS lacks personal jurisdiction to be joined in this matter because it is an overseas corporation." (Defs.' Resp. Mot. Leave to Amend 4.) The Court finds no merit to this argument.

It is well-established, under federal law, that it is inappropriate to dismiss a case or deny leave to amend based on a *sua sponte* determination of personal jurisdiction. Azubuko v. E. Bank, 160 Fed. Appx. 143, 146 (3d Cir. 2005) (citing cases); Bernheim v. Estate of Bedrick, No. CIV.A.07-2195, 2007 WL 2900377, at *7 n.9 (D.N.J. Oct. 1, 2007). Where the court could "conceivably have personal jurisdiction" over a defendant sought to be added via an amended complaint, the court should not deny leave to amend based on futility. Pegasus Int'l., Inc. v. Crescent Mfg., No. CIV.A.06-2943, 2007 WL 1030457, at *7 (E.D. Pa. Apr. 2, 2007); see also Metex Mfg. Corp. v. Manson Envtl. Corp., No. CIV.A.05-2948, 2008 WL 474100, at *4 (D.N.J. Feb. 15, 2008) (finding that a decision on the issue of personal jurisdiction, in the context of a motion to amend a complaint, was premature because the parties had not submitted affidavits or

other jurisdictional evidence; the Court should presume that it had jurisdiction over the proposed defendant); Mylan Pharms., Inc. v. Kremers Urban Dev., No. CIV.A.02-1628, 2003 WL 22711586, at *4 (D. Del. Nov. 14, 2003) (declining to deny leave to amend based on challenge to personal jurisdiction since "[t]here is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in a complaint" and "the parties have not yet developed a record on the possible contacts [proposed defendants] may or may not have in the [forum state]"); Wolfson v. Lewis, 168 F.R.D. 530, 534 (E.D. Pa. 1996) (holding that the court would not rule on whether it lacked personal jurisdiction over the additional defendants because there was insufficient evidence and the issue should be presented in a motion to dismiss); Hershey Pasta Grp. v. Vitelli-Elvea Co., No. CIV.A.95-231, 1995 WL 862016, at *4 (M.D. Pa. June 27, 1995) ("Because the court conceivably could have personal jurisdiction over [proposed defendants], the court cannot find that joining these two parties would be an exercise in futility.").

In this case, it is conceivable that the Court could have personal jurisdiction over Salomon SAS. Plaintiffs were not required to plead facts in their Amended Complaint supporting personal jurisdiction over Salomon SAS. Moreover, the parties have not yet had the opportunity to develop a record regarding either Salomon SAS's possible contacts with the state of Pennsylvania[1] or Salomon SAS's desire to waive personal jurisdiction. Finally, Defendants have offered no argument or factual evidence to affirmatively demonstrate that personal jurisdiction is clearly lacking. Accordingly, the Court rejects Defendants' futility contention.

---

[1] In their Reply Brief, Plaintiffs reference the recently completed deposition of the Amer Sports Winter & Outdoor Company's corporate representative as evidence of Salomon SAS's regular business in the United States and contemplated use of its products in Pennsylvania. Plaintiffs, however, do not provide a copy of this deposition and the Court declines to engage in an analysis of this issue without full briefing from both parties.

### B. Prejudice as a Result of Undue Delay

Defendants' second argument contends that they would be prejudiced by a grant of leave to Plaintiffs to amend their Complaint. Again the Court deems this argument meritless.

Prejudice to the non-moving party is "the touchstone" for the denial of a request for leave to amend. Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quotations omitted); Universal Computer Consulting, Inc. v. Pitcairn Enter., Inc., No. CIV.A.03-2398, 2005 WL 1213884, at *4 (E.D. Pa. May 18, 2005). "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). "But the non-moving party must do more than merely claim prejudice." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). To state a cognizable claim of prejudice, the defendant must establish that it would be "'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered' had the allegations in the amended complaint been timely made." Pegasus Int'l, 2007 WL 1030457, at *5 (quoting Arthur v. Maersk, 434 F.3d 196, 206 (3d Cir. 2006)) (further quotations omitted). A defendant may also be burdened by being required to defend against entirely new facts or legal theories. See Tarkett, Inc. v. Congoleum Corp., 144 F.R.D. 289, 291 (E.D. Pa. 1992). Notably, however, even when a proposed amended complaint adds substantive allegations against a defendant or adds parties related to the defendant, where "'[t]he evidence required to meet these new allegations is substantially similar to that which was originally required,'" prejudice does not exist. Pegasus Int'l, 2007 WL 1030457, at *5 (quoting Dole v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990)). The need for additional discovery due to amendment does not, without more, prejudice the non-moving party. Dole, 921 F.2d at 488. Ultimately, the non-moving party bears the burden of demonstrating prejudice. AMS Constr. Co. v. Reliance Ins. Co., No. CIV.A.04-2097, 2006 WL 1967336, at *3 (E.D. Pa. July 12, 2006).

The Amer Sports/Salomon Defendants have not met this burden. The entirety of their argument on this issue contends that:

> the Amer Defendants would be prejudiced if the plaintiffs were granted leave to amend their Complaint to join Salomon SAS as an additional defendant. Plaintiffs are attempting to join Salomon SAS, an overseas corporation, as an additional defendant in this matter. The Amer Defendants would be prejudiced in their defense of this matter due to the delay caused by plaintiffs' untimely and late attempt to join an overseas corporation.

(Defs.' Resp. Mot. Leave to Amend 4.) At no point do Defendants specify how or why they would suffer prejudice. Indeed, Plaintiffs only commenced this litigation in May of this year and, to date, only one deposition has taken place. Moreover, the Court finds no undue delay. Plaintiffs were not apprised of the possibility that they may have failed to name a crucial defendant until they had discovery responses – received October 1, 2010 – which revealed that Salomon SAS was in possession of most of the relevant documents. When the Amer Sports/Salomon Defendants both refused to produce the requested documents and declined to consent to the proposed Amended Complaint, Plaintiffs promptly filed the present Motion with this Court. Absent some concrete showing that Defendants would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [they] would have offered," the Court declines to deny leave to amend on this basis. Pegasus Int'l, 2007 WL 1030457, at *5.

### III. CONCLUSION

In light of the foregoing, the Court does not find that Plaintiffs' proposed Amended Complaint, which seeks to add Salomon SAS as a defendant, is either futile or prejudicial to the Amer Sports/Salomon Defendants. Accordingly, the Motion is granted and Plaintiffs shall be given leave to file their proposed Amended Complaint.